May it please the court. My name is Todd Leventhal. I represent Nicholas Bickle. Nicholas Bickle, as you know, was a decorated Navy SEAL who was tried by jury and found guilty of importing AK-47s and guns. The questions that I've presented to the court is whether or not the sentence was reasonable under the guidelines, given that he had a medical post-traumatic stress syndrome, PTSD, as well as whether or not the fact that he was terminated from the Navy was also a reason for the court to depart downward. And the conjunctive versus one in the end. I'll start with post-traumatic stress disorder. The medical doctor advised the court that he did in fact suffer from post-traumatic stress syndrome. The standard of review that the court, this Court, takes to determine whether or not the lower court did what it needed to do was a substantive reasonableness standard. Other circuits have found that that standard is a little lackadaisical, and other courts, for example, the court in District of Columbia, where in this Court asked us to brief the Warren matter, has a two-part standard in reviewing  would be any significant procedural error, and the second one was overall reasonableness to ensure objectively reasonable under the 3553A factors. Judge Reinhold, in Whitehead dissent in this courtroom, stated that we must conduct a serious review of a sentence imposed by a district judge to ensure that they are, in fact, reasonable. Well, we have factors that we go through to determine reasonableness, and that's pretty much straight law within our circuit. Where did the district judge go awry on your vision? It's my contention that while and although that there was a long and lengthy sentence that both the government submitted briefs and memorandums, as well as the defense submitted briefs and memorandums, the sentencing hearing was long and lengthy, I believe that the – when it came down to the analysis on what a reasonable sentence should be for a Navy SEAL that has been in two tours and ended up with 17-1⁄2 years in prison, there was not an appreciable amount of time given to his post-traumatic stress disorder. The district judge considered all the information that was given and concluded, as a matter of fact, that there was no evidence sufficient that he could see that he had it before his arrest, and that the – although the PTSD is a problem, he concluded that there's no evidence that it came from war effort, but that it's more from the traumatic episode he went through after his arrest. That's a factual finding. Where do you – how would you argue that it's clearly erroneous? Well, that's – it's contrary to what the VA doctor indicated in his report. The VA doctor indicated that after he had assessed Mr. Bickel, after he sat down with Mr. Bickel, that he did, in fact, assess post-traumatic stress disorder. Right. He assessed it. But the question is, did he have it before his arrest? That is, did it – was it episode because he's arrested and going through the criminal process, or did it, in fact, come from his war responsibilities? And that was never in the medical records, whether or not it was based on the arrest or based on his two tours in Iraq and Afghanistan. Precisely. So the district judge says there's no evidence that it was, and therefore he considered it as something that took place after the arrest where there's evidence of it. Is there something wrong with that? Well, I would suggest that there is when you have a medical doctor who can't – oftentimes when Marines and Navy SEALs are coming back, they don't report right when they come back for a number of reasons that I think we can all understand. They're in – you know, they want to get back there, or if they do report while they're there, it takes an additional three or four weeks over there to be medically evaluated to even come back. In addition to that, when they do come back, you're looking at a guy who's a Navy SEAL. It's not something that he does report or will report. He did report after the fact, but it's not conclusive that it was because of the fact that he was charged with these criminal charges. Well, I think it – where does that leave us? There's no evidence that it happened before his arrest, and so the judge says because there's no evidence of it, that I'm not going to consider that as something that occurred as a result of his war record. Where does that leave us? Well, I believe a further analysis should have been had. I think that the court – Where would that be? Well, I think that the court could have stopped or – stopped the proceedings and had his counsel go out and get him. I mean, we test people, you know, who are mentally challenged all the time. That's not an issue. We have those tests. But he was tested, correct? He was submitted to an exam by a psychiatrist. The psychiatrist rendered his view. The judge, it seems to me, was not at all lackadaisical. I mean, I don't think anyone could consider this sentencing hearing to be a lackadaisical one. He came to the conclusion after talking, you know, going through it, reviewing the statements, talking about his experience in reviewing medical records, coming to the conclusion that this wasn't sufficient for him to do something different than he did. It seemed like he gave a very reasoned, very considered opinion with regard to the sentence. And again, if we're dealing with a Navy SEAL that has a diminished capacity or doesn't understand the difference between right and wrong or is illogical, we could, this Court could, or the lower court all the time can question that and send that back for a further review to say, hey, Mr. Bickle, you didn't go in there to get an evaluation based upon, you know, your criminal charges. So the doctor wasn't thinking, I better write, you know, we need to look at this or how did this happen? Is that the judge's problem? The judge considered all this and explained that there's, he said there's nothing in the record to suggest to him that your client had a reduced ability or capacity to know right from wrong. I mean, he considered it. It's not that he brushed it aside or ignored it or that there was something in the record that was so obviously going the other way that he would be acting unreasonable. I'm not sure what you would expect him to do. The record was presented to him. You, another counsel on behalf of the client, presented the psychiatrist's report. He considered it and made a discretionary determination. I understand the discretion. I mean, he did, he did, it was presented to him and he did say, I've read it, he had a chance to read it right there, and he said, this seems like it was after the fact, after the serious criminal charges came about. And therefore, I don't believe that it's based upon any wartime. He did. You're right. You're correct. I just thought that more analysis needed to be done in terms of whether or not a sentence is a reasonable sentence under those factors. That's why I presented it to the court. Are you suggesting any time there's a finding of post-traumatic stress disorder that the district court is required to give some leeway or some downward departure based on that? No. When you have a case like this where you have a Navy SEAL that's been in Afghanistan and Iraq and has spent the last three or four years over there as a SEAL, I think that there could be a heightened sense of, you know, maybe we had an error on the side of caution. Now, you've got other cases where, for example, the Warren case where, you know, there's a guy who's working over in, I believe it was Libya. No. You know, there's no war zone over there. I mean, you're talking about a guy that's in the war zone. I have a minute and 27. I would like to reserve, if that's possible. Thank you very much. We'll hear from the government. May it please the Court. I'm Camille Dan for the United States. Your Honors, defense counsel and the government do agree on one thing, and that is that this is a case about abuse, but it's not the district court's abuse of discretion in any way. It's a case about Mr. Bickel's abuse of the trust and the power vested in him by the United States. He took an oath to defend this country against all enemies, foreign and domestic, and then he brought a literal arsenal of weapons, machine guns, illegal machine guns and Ruger pistols, into the United States and distributed them indiscriminately onto the streets of the United States to whoever would pay the price. He did that for profit. And that's the abuse that occurred in this case. The district court thoroughly considered the arguments, although when a guideline sentence is imposed, and this was a mid-guideline sentence, usually not too much explanation is necessary. But in this case, the district court made a thorough and lengthy record of its findings, I thought did an excellent job of doing so. Its findings are supported by the record and considered the factors as it was its prerogative, weighed the factors, and under the factors, logically and reasonably found that a guideline sentence was appropriate as in agreement with the commission, in agreement with probation who analyzed the case and researched the case, in agreement with the government, and imposed a mid-level guideline sentence. The court outlined the factors under the statute that it considered and explained rationally each of the factors, and I think the record is well established as a basis for the sentence. And I can tell by the court's questioning that the court's familiar with the record and the findings of the district court, and I don't want to take up any more time than necessary. I think the main reason we needed a discussion is this PTSD is not new. I'm sure when I came back in World War II, there were a lot of people that had it. We just thought there were different kinds of reactions to the service. But now it's been recognized, and we wanted to make sure that we understood the process in the sentencing guidelines, whether this is a reasonable sentence. And we circulated the Warren case, not because we're going to follow the D.C. Circuit, obviously, but because it is a court that dealt with it, and the district court here, apparently, by reading the Warren case, did just about what the district court did in the Warren case. So we wanted to make sure that the process was such that the sentence was reasonable. Now, as I understand it, this was the same sentence that was recommended by the pre-sentence report. It was a mid-range sentence. That's correct. Specifically, then, did the district judge – the district judge found there was insufficient evidence that he had the PTSD prior to his arrest. And we'll assume for the sake of argument that there is – that that was substantiated and that it wasn't a clearly erroneous finding. What does that leave us on how we deal with this episode that the man obviously has, the physicians indicated he has? In what way would that affect, in your judgment, the extent of sentence that a judge should give in giving a reasonable sentence under the factors, the 3553 factors? Well, frankly, I need to apologize to the Court. I didn't get the e-mail on the new case. I was – you know, I'm behind the times, I guess, a little bit with these electronic devices, and I was already traveling. He was at the very end. Mr. Leventhal told me about it today, and I was trying to skim it, but I didn't get a chance. But I will say that I think the district court correctly determined that there was no evidence upon which to find it was a basis for the crimes because the medical report itself said that Mr. Bickel's thought process was not impaired, and there was no evidence that, according to the medical report, that he had an impaired ability to know right from wrong. It also said that some of the symptoms were no doubt exaggerated for purposes of the report. He was released without limitation. I note that Defense Counsel, in making their recommendation for a facility for a defendant to serve his time, the Court pointed out that there are two medical facilities available in the Bureau of Prisons, and those were not the facilities that were requested. So it seems to, at least to an extent, minimize Defense Counsel's concern with the PTSD at that time. Also, you know, in talking about whether the PTSD contributed to the crime, there was evidence in the record that the first machine gun that the defendant brought back into the country was as early as 2007, which preceded the indictment crimes altogether. And that was his first what he called trophy that he saved. And what the district court said is that what really the characteristic of the defendant that was really prominent was his self-motivation and self-interest, and that was the basis of his actions. And that's also, you know, spelled out in the record. Counsel, Judge Gould, I have one question for you, if I may. The question is this. I don't imagine there's a tremendous number of cases where military personnel after their active duty or during it are dealing in arms. But there must be, I assume there are some. I just wondered if from your perspective you can tell me in other cases where soldiers have entered the arms trade illegally, what types of sentences have been given? Are there comparators that where other courts have sentenced at the high end or the low end of the guidelines? Or is there another generalization that you're able to make? Candidly, Your Honor, I don't know. I'd be very happy to research that and submit additional points on that if the court would request and would like that. I know this record referred to one other case where another Navy SEAL was caught illegally importing weapons. And I know only of Mr. Bickle's statement that he should have been a better smuggler, but I know nothing of the sentence that he received or what the outcome was. So in that regard, I can't say. But I do note also that the district court gave a middle guideline sentence. He could have given a high-end guideline sentence and he didn't. He went in the middle. And yes, it was in accordance with the probation's recommendation, but I think it accounts perhaps some for the PTSD as well because there were very few mitigating circumstances really. I mean, the district court said, I've considered all of the circumstances, including all those submitted by family and friends, although the court didn't find some by the family and friends were proven by the record, but did consider them. And I don't know of any other reason that a military person should be treated differently to the extent that he lost his job as a Navy SEAL and to the extent that that was more of a burden on him than any other job, I would say mirrors the extent of his abuse of the trust that was placed on him. Very few people receive that rank of a Navy SEAL. And his abuse of that trust was horrific. And the machine guns that were placed on the streets in the United States indiscriminately as he would have to know the potential for violence that that created and the fact that he did that for profit. Okay. Thank you very much, counsel. We'll hear from your adversary for rebuttal in a little over a minute. I would like to just address quickly a couple of things. It seemed from a reading, now I was not the counsel for Mr. Bickle at sentencing, but it seemed from the reading of the transcript that the district court judge went above and beyond because he was a Marine, because he was a Navy SEAL. He had quotes like, Mr. Nickel was able to receive two Medals of Valor. Those are important. He had letters that he actually saved lives over there from the Marines that he saved lives for. And it was almost, when I say laxity, it was shrugged off as the Medals of Valor, which are very high esteem medals, were done more for just being a participant, is what the word was, what the judge said. Because your issue is not because of the post-traumatic stress disorder, that he didn't know right from wrong, and that should be taken into consideration. Isn't that the bottom line? Well, that is the bottom line. Didn't the judge specifically rule that based on his review of the complete record that it showed substantial planning and that your client knew what he was doing and knew that it was illegal, and based on a number of factors, including the type of planning that was done, that he was directing others, that he, I think the judge's words were, didn't dirty his hands by selling the weapons but had others and directed others to do so so that he would keep his hands clean. That strikes me as the judge is really looking at this and considering the factors, whether it was before or after the arrest. And he came to the conclusion it was not there before, at least there was nothing in the record to suggest that disorder was there before. I would agree that there, that the judge did appreciate or looked at some of the, he was, he sat in trial. It was a nine-day trial. And so you're correct. Are you asking us then to say the judge, you were wrong in exercising discretion, that your conclusion, that he was planning and knew the consequences of his actions, that they were illegal, we should overturn that? No, what I'm suggesting to the court, and the court, this court in Cantu, this court in Cantu remanded that and told that lower court to go ahead and take a look at the, and take a look at, and you can go ahead and downward depart based on a post-traumatic stress disorder. What I'm saying here is that when this judge quoted, I have never met anyone who was actually engaged in combat that hasn't been changed by it. No changes justify, no changes justify committing a crime. I don't know by saying that if he knew that he could go ahead and downward depart because it seems to me that based upon that statement, that post-traumatic stress disorder is not even in his vocabulary. Thank you. The case just argued to be submitted for decision. Thank you very much, counsel.
judges: Huck, Wallace, Gould